FILED

2012 Dec-05  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**WESLEY PHILLIPS, individually
and on behalf of a class of similarly situated
individuals,**

     **Plaintiff,**

**v.**

                                           **Civil Action No: _____
CLASS ACTION**

**MOZES, INC. and
THE COCA-COLA COMPANY,**

     **Defendants.**

## Complaint

### Preliminary Statement

1.    In an effort to promote the sale of Coke Zero, Defendant The Coca-Cola Company ("Coca-Cola') along with its marketing agent Mozes, Inc. ('Mozes") engaged in a campaign of illegal telemarketing via the transmission of unauthorized advertisements in the form of text message calls (wireless spam or SMS spam) to the cellular telephones of consumers. Plaintiff Wesley Phillips brings this class action complaint against Defendants Coca-Cola and Mozes to halt Defendants' practice of making unsolicited text message calls to cellular telephones and to obtain statutory damages for the Defendants' violations of applicable telemarketing law.

### Parties

2.    Plaintiff Wesley Phillips is a citizen of Alabama, residing in Birmingham, Jefferson County.

3.    Defendant Coca-Cola is a Delaware corporation with its principal place of business in Atlanta, GA.

581240

4.     Mozes, Inc. is a California corporation with its principal place of business in Palo Alto, CA.  According to its own statements, Mozes is "the leader in mobile engagement."

## Jurisdiction

5.     The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

## Venue

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## Facts Common to All Causes of Action

7.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail, have increasingly looked to alternative technologies through which to send bulk solicitations to consumers cheaply.

8.     One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

9.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone alerts him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

10.     Unlike more conventional advertisements, wireless spam can cost its recipients money because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or for a text plan that includes a number of messages, whether or not the text message is authorized.

11.     On or about November 5, 2011, Plaintiff received a series of unsolicited text messages from Defendants at a college football game between Alabama and Louisiana State University ("LSU") via an automatic dialing system to his cell phone.

12.     Specifically, while attending the football game, Plaintiff noticed an announcement on the scoreboard instructing the Plaintiff to submit a text to a certain number to vote for his favorite team.

13.     The Plaintiff did so as instructed and voted for his favorite team – Alabama.

14.     In immediate response, the Plaintiff received a text commercial solicitation inviting him to reply with his date of birth so he could be entered into a contest for an autographed football and to join the Coke Zero mobile list ("First Unsolicited Text").

15.     This solicitation included an advertisement for the Coke Zero mobile list.

16.     In voting for his favorite football team, the Plaintiff did not provide the Defendants with prior express consent in writing authorizing the Defendants to send him text messages.

17.     After the Plaintiff did not respond to the request for his date of birth so he could enter a contest and join the Coke Zero mobile list, the Defendants sent the Plaintiff another text message ("Second Unsolicited Text").

18.     The Second Unsolicited Text mentioned Coke Zero and urged the Plaintiff to continue to vote for his favorite team "to make sure they win."

19.     The Plaintiff again responded and voted for his favorite football team.

20.     In voting for his favorite football team, the Plaintiff did not provide the Defendants with prior express consent in writing authorizing the Defendants to send him the text unsolicited messages.

21.     In immediate response to the Plaintiff's second text vote for his favorite team, the Defendants sent the Plaintiff another text message inviting him to reply with his date of birth so he could be entered into a contest for an autographed football and to join the Coke Zero mobile list ("Third Unsolicited Text").

22.     This solicitation included an advertisement for the Coke Zero mobile list.

23.     After the Plaintiff did not respond to this second request for his date of birth to enter  a contest and join the Coke Zero mobile list, the Defendants sent the Plaintiff yet  another text message ("Fourth Unsolicited Text") urging him to continue to vote for his favorite team, which mentioned Coke Zero.

24.     The Plaintiff again responded and voted for his favorite football team.

25.     In voting for his favorite football team, the Plaintiff did not provide the Defendants with prior express consent in writing authorizing the Defendants to send him unsolicited text messages.

26.     In immediate response to the Plaintiff's third text vote for his favorite team, the Defendants sent the Plaintiff another text message inviting him to reply with his date of birth so he could be entered into a contest for an autographed football and to join the Coke Zero mobile list ("Fifth Unsolicited Text").

27.     This solicitation included an advertisement for the Coke Zero mobile list.

28.     In response to the Fifth Unsolicited Text, the Plaintiff provided the Defendants with his date of birth.

29.     In response, the Defendants informed the Plaintiff that he had "joined the Coke Zero mobile list."

30.     Realizing he had inadvertently joined a commercial list, and was no longer simply voting for his favorite football team, the Plaintiff cancelled.

31.     In response, the Defendants sent the Plaintiff yet another text message informing the Plaintiff that his membership had been cancelled, and then directing the Plaintiff to a web site operated by Mozes to "learn more."

**The Legal Basis of the Claims**

32.     The claims of the Plaintiff, and the class of persons he seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

33.     On December 20, 1991, Congress enacted the TCPA, in an effort to address certain telemarketing practices widely considered invasive of consumer privacy.  In enacting the TCPA, Congress specifically imposed heightened restrictions on the widespread practice of telemarketing via Robocall:

> It is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons.  These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape of a voice recording service, and do not disconnect the line even after the customer hangs up the telephone.  For all these reasons, it is legitimate and consistent with the Constitution to impose greater restrictions on automated calls than on calls placed by lived persons.

5

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C.R. 2736, 2737, at para. 25 (April 17, 1992).

34.     The TCPA prohibits the making of any call—without prior express consent of the called party—by using any automatic telephone dialing system or artificial or prerecorded  voice to any cellular telephone. Defendants violated the TCPA and Plaintiff's right to privacy by electronic transmission of written material to the cellular telephones of the members of the class, namely unsolicited commercial advertisements through text message calls using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

### The TCPA Imposes Liability on Entities Who Benefit from Illegal Telemarketing by Third-Party Telemarketers

35.     Under the TCPA, a person or entity can be liable for calls made for its benefit.

36.     Section 227(b) broadly bans illegal telemarketing by parties who "initiate" illegal telemarketing calls—a term that means "to cause or facilitate the beginning of; set going." Merriam Webster Dictionary.

37.     Under the statute, when an entity such as Defendant Coca-Cola benefits from illegal telemarketing by third-parties such as Defendant Mozes, the entity is properly considered to have "initiated" the calls within the meaning of § 227(b).

38.     The FCC has long applied the TCPA in this manner—an application that prevents "legitimate" businesses who reap the benefits of illegal telemarketing from outsourcing TCPA liability to the often impecunious, fly-by-night third-party telemarketers and sales-lead generators who physically place the illegal calls or text messages.

39.     In fact, sixteen years ago the FCC explained that its rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of*

*1991*, Mem. Op. and Order, 10 F.C.C.R. 12391 ¶ 13 (Aug. 7, 1995).  For this reason, the FCC

concluded that *"[c]alls placed by an agent of a telemarketer are treated as if the telemarketer*

*itself placed the call*."  *Id.* (emphasis added).

40.     More recently, in a 2005 declaratory ruling regarding telemarketing calls made by

agents on behalf of an insurance company, the FCC restated its conclusion "that a company on

whose behalf a telephone solicitation is made bears the responsibility for any violation of our

telemarketing rules and *calls placed by a third party on behalf of that company are treated as if*

*the company itself placed the call*."  *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 F.C.C.R. 13664, 13667 ¶ 7

(2005) (emphasis added).

41.     Plaintiff alleges that the text messages at issue in this case were made for the

benefit of the Defendant Coca-Cola.  As such, the text messages were made on Coca-Cola's

behalf, and for its benefit, and Coca-Cola therefore is liable for the messages, even if it did not

physically place them.

42.     Plaintiff further alleges that Coca-Cola is responsible for the illegal actions of

their agent, Mozes.

## Class Action Allegations

43.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure on behalf of a class of all other persons or entities similarly situated throughout the

United States.

44.     Upon information and belief, pursuant to a uniform policy and procedure, Coca-

Cola and/or its authorized agents, including Mozes, has engaged in widespread advertising via

unsolicited wireless spam in violation of the TCPA.

45.     Upon information and belief, Coca-Cola and/or its authorized agents, including Mozes, has transmitted unsolicited wireless spam calls to thousands of individuals and entities throughout the United States.

46.     Upon information and belief, Coca-Cola and/or its authorized agents, including Mozes, did not obtain the consent of recipients of their wireless spam.

47.     The class of persons Plaintiff proposes to represent with respect to Count One and Two is tentatively defined as all persons or entities within the United States who, within the four years prior to the filing of the initial Complaint, received wireless text message calls promoting Coca-Cola's goods or services.

48.     The class as defined above is identifiable by phone records and phone number databases.  On information and belief, the potential class members number in the thousands and constitutes a class so numerous that joinder of all class members is impracticable.

49.     Plaintiff is a member of the class.

50.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

        a.   Whether Defendants violated the TCPA by engaging in advertising by unsolicited wireless spam;

        b.   Whether the unsolicited prerecorded telemarketing calls at issue were initiated by Coca-Cola;

        c.   Whether the unsolicited prerecorded telemarketing calls at issue were for Coca-Cola's benefit; and

        d.   Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of Coca-Cola's actions.

51.     Plaintiff's claims are typical of the claims of the class.

52.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions.

53.     Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

54.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

55.     Plaintiff is capable of and is willing to represent the other members of the class.

56.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**First Cause of Action for Violation of the TCPA**

57.     Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

58.     The TCPA prohibits the making of any call—without prior express consent of the called party—by using any automatic telephone dialing system or artificial or prerecorded  voice to any cellular telephone. Defendants violated the TCPA and Plaintiff's right to privacy by electronic transmission of written material to the cellular telephones of the members of the class, namely unsolicited commercial advertisements through text message calls using an automatic telephone dialing system.

59.     These text message advertisement calls were made without the prior express invitation or permission of Plaintiff and the members of the class.

60.     Defendants have, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

61.     As a result of Defendants' illegal conduct as alleged herein, the members of the class suffered actual damages and, under § 227(b)(3)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

**Second Cause of Action for Injunctive Relief**

62.     Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

63.     Defendants, their authorized agents, vendors, or contractors have possession, custody and control of the business records, databases, computer systems and other information and equipment necessary to identify the members of the class, including but not limited to the names, addresses and cellular telephone numbers of the class members. Unless immediate injunctive relief is ordered, Defendants their authorized agents, vendors, or contractors may alter, erase, delete, destroy or otherwise dispose of and remove such systems, records and equipment. For this reason, Plaintiff is entitled to an order prohibiting and enjoining Defendants their authorized agents, vendors, or contractors from altering, deleting, destroying or otherwise disposing of any documents, records, databases or computer systems that are necessary to identify the members of the class.

64.     Defendants should be enjoined from further violations of the TCPA.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

        a.      An order certifying the Class as defined above;

        b.      An injunction requiring Defendants to cease all wireless spam activities and restraining Defendants from altering, erasing, changing, deleting, destroying or otherwise removing or disposing of any documents, records, databases, computer systems and the like currently in its possession or control or in the possession or control of its agents and contractors which are used or useful in identifying all persons, corporations or other entities to whom Defendants have transmitted text message advertisements;

        c.      An order preliminarily and permanently enjoining Defendants from engaging in the practices challenged herein;

        d.      Reasonable attorneys' fees and costs; and

        e.      Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

*/s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
BAILEY & GLASSER, LLP
One Chase Corporate Center, Ste. 400
Birmingham, Alabama 35244
Telephone:  (205) 313-6491
Facsimile:   (205) 313-6492
Email:  dselby@baileyglasser.com