IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**WESLEY PHILLIPS, individually
and on behalf of a class of similarly situated
individuals,**

    **Plaintiff,**

v.                                              Civil Action No: 2:12-cv-04033-JEO
                                                **CLASS ACTION**

**MOZES, INC.,
THE COCA-COLA COMPANY,
and ePrize, Inc.**

    **Defendants.**

### First Amended Complaint

### Introduction

    1.    Federal law bans nonemergency "robocalls," *i.e.*, telephone calls placed through an automatic telephone dialer system, to cellular telephones unless the recipient expressly consents to receive those calls.  Defendant The Coca Cola Company and its marketing agent, Defendant Mozes, Inc., attempt an end-run around this prohibition by promoting pretextual "vote campaigns," including "game-time promotions" intended to harvest cell phone numbers so the Defendants can transmit spam text messages promoting Coke products.

    2.    This promotional business model necessarily results in serial violations of the Telephone Consumer Protection Act, as illustrated by the facts of this case.  Here, the Defendants ran a scoreboard message at an Alabama football game asking fans to "vote for your favorite football team."  The scoreboard message did not disclose that, by voting, a fan would receive spam texts on his or her cell phone from the Defendants.  Nonetheless, after the Plaintiff "voted," the Defendants sent him a series of spam text messages soliciting him to join a mobile list intended to promote the sale of Coke.

599167

3. This practice violated the TCPA in two independent respects. First, Defendants never had the Plaintiff's *prior express consent* to receive computer-generated spam text messages from them, as the law requires. 47 U.S.C. § 227(b)(1)(B). Second, Defendants unlawfully sent text spams to a number that Plaintiff had listed on the National Do Not Call Registry. A listing on the Registry bans all telemarketing calls to the listed number unless the telemarketer has express *written* consent to place the call—which Defendants never obtained. *Id*. § 227(c); 47 C.F.R. § 64.1200(c)(2)(ii).

4. On behalf of a proposed nationwide class of persons who have received illegal telemarketing calls from the Defendants, Plaintiff brings this action to enforce the provisions of the TCPA, and to obtain statutory penalties and other relief authorized by federal law.

## Parties

5. Plaintiff Wesley Phillips is a citizen of Alabama, residing in Birmingham, Jefferson County.

6. Defendant The Coca-Cola Company (sometimes "Coca Cola" or "Coke") is a Delaware corporation with its principal place of business in Atlanta, GA.

7. Defendant Mozes, Inc.[1] is a California corporation with its principal place of business in Palo Alto, CA. According to its own website, Mozes is "the leader in mobile engagement."

8. Defendant ePrize, Inc. is a Michigan corporation with its principal place of business in Detroit, Michigan. According to the Mozes website, ePrize, Inc. recently acquired Mozes, Inc.

---

[1] *See* Defendants Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 12). The Motion simply states "Defendants Gerzhom, Inc. (f/k/a Mozes, Inc.)" and there is no description of Gerzhom, Inc. and/or whether Mozes, Inc. is a proper named party. There is no explanation as to where Gerzhom, Inc. was incorporated, whether Gerzhom, Inc. purchased Mozes, Inc. and when, or whether Gerzhom, Inc. is responsible for any and all liabilities of Mozes, Inc.

9. At all times relevant to this Complaint, Mozes acted as Coke's agent in marketing Coke products via text messages, and the two worked jointly to promote Coke products.

## Jurisdiction

10. The District Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

## Venue

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District.

## The Legal Basis of the Claims

*The TCPA prohibits robocalls to cell phones unless the recipient expressly consents to receive the calls*

12. Congress enacted the TCPA in 1991 to address certain telemarketing practices widely considered invasive of consumer privacy.

13. While the statute imposed restrictions on a wide set of telemarketing practices, its strictest provisions apply to telemarketing by automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1).

14. An automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. *Id.* § 227(a)(1). The term extends to equipment that has the capacity to dial numbers without human intervention. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14093 (2003).

15. With the limited exception of calls made for emergency purposes, the TCPA bans *all* calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls.  47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

16. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

*The TCPA prohibits telemarketing calls to persons who list their numbers on the Do Not Call Registry, unless the person provides express written consent*

17. Another innovation realized through the TCPA was the Federal Trade Commission's establishment of the National Do Not Call Registry.

18. The Registry allows consumers to opt-out of telemarketing by registering their numbers on a federal database.  More than 200 million numbers are listed on the Registry.

19. The TCPA prohibits persons or entities from initiating telephone solicitations to consumers who have listed their phone numbers on the Registry, unless the consumer provides "prior express invitation or permission."  47 U.S.C. §§ 227(a)(4), (c); 47 C.F.R. § 64.1200(c).

20. The requisite prior express invitation or permission "must be evidenced by a signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed[.]"  *Id.* § 64.1200(c)(2)(ii).

21. To ensure the effectiveness of the Do Not Call Registry, telemarketers are required to access the database and to "scrub" their calling lists of the telephone numbers in the database.

22. A person whose number is on the Registry, and "who has received more than one telephone solicitation within any 12-month period by or on behalf of the same entity" in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

*The TCPA imposes liability on an entity that benefits from illegal telemarketing, even if the entity did not physically dial an illegal call*

23. Under the TCPA, a person or entity can be liable for unlawful calls even if the entity did not physically dial the illegal call.

24. Section 227(b)(1)(B) broadly bans telemarketing by parties who "initiate" illegal telemarketing calls—a term that is defined in the Merriam Webster Dictionary "to cause or facilitate the beginning of; set going."

25. Similarly, § 227(c)(5) imposes liability for telemarketing calls placed in violation of the TCPA's Do Not Call on the entity that placed the call, or on whose behalf the call was placed.

26. Therefore, when an entity such as Defendant Coca-Cola partners with and delegates authority to a marketing agent such as Defendant Mozes, Coca-Cola is properly considered to have "initiated" the calls through Mozes within the meaning of § 227(b)(1)(B), and is also liable for illegal calls made on Coke's behalf under § 227(c)(5).

27. The Federal Communications Commission, which has primary authority for implementing and enforcing the TCPA, has long applied the TCPA in this manner. The FCC recognizes that this application of the statute prevents "legitimate" businesses who reap the benefits of illegal telemarketing from outsourcing TCPA liability to the often impecunious, fly-

by-night third-party telemarketers and sales-lead generators who physically place the illegal calls or text messages.  The FCC has stated that the TCPA "encompasses both voice calls and text calls to wireless numbers including, short message service (SMS) calls." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003).  The district courts have upheld the FCC's interpretation that a "call" under the TCPA includes a text message.

28.	In fact, sixteen years ago, the FCC explained that its rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Mem. Op. and Order, 10 F.C.C.R. 12391 ¶ 13 (Aug. 7, 1995).  For this reason, the FCC concluded that "[c]alls placed by an agent of a telemarketer are treated as if the telemarketer itself placed the call." *Id.*

29.	More recently, in a 2005 declaratory ruling regarding telemarketing calls made by agents on behalf of an insurance company, the FCC restated its conclusion "that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 F.C.C.R. 13664, 13667 ¶ 7 (2005).

## The Factual Basis of the Claims

*"Spam" text messages provide the telemarketers with instant
communication with consumers to promote the sale of goods and services*

30. In recent years, marketers stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations to consumers easily and cheaply.

31. One of the newest methods of bulk marketing is to advertise through text messages sent to mobile phones.

32. Unlike faxes and unanswered phone calls, a text message allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. Many cell phones immediately alert the recipient of new text messages. Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members, and friends. Text messaging is also used by schools, police departments, fire departments, and emergency medical services across the country.

33. The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages.

34. And unlike other forms of advertisement, spam texts can cost its recipients money. Many wireless customers have telephone plans that charge a fee for each text message, or that permit a limited number of text messages per month.

35. Spam text messages are a burgeoning phenomenon. One authority estimates that Americans received more than four billion spam texts in 2011—more than double the number sent just two years earlier.

*How the Defendants' sham "vote" campaign generates*
*spam texts promoting the "Coke Zero mobile list"*

36. On November 5, 2011, Plaintiff attended an SEC college football game between the University of Alabama and Louisiana State University.

37. During the course of the game, Plaintiff saw an announcement on the stadium's scoreboard instructing fans to send a text message to a specified number to "vote for your favorite team."

38. Plaintiff responded to the announcement and voted for his favorite team— Alabama.

39. The announcement did not disclose that persons who sent "vote" texts would receive telemarketing solicitations from the Defendants, or from anyone else.

40. Plaintiff did not know or expect that the act of voting would cause the Defendants to send spam text messages to his cell phone promoting Coke products and Plaintiff did not expressly consent to receive text messages from Defendants when he responded to the announcement and voted for his favorite team

41. Plaintiff had no intention or desire to receive telemarketing messages on his cell phone.  In fact, for years Plaintiff had opted out of telemarketing by listing his phone number on the National Do Not Call Registry.

42. Plaintiff did not expressly consent—in writing or otherwise—to receive Coke telemarketing calls.

43. Nevertheless, the day of the game his "vote" generated a rapid-fire series of automatically-generated, computer-dialed spam text messages from the Defendants.  (*See* Chart of Text Messages, attached as Exhibit 1.).  The content and timing of these text messages from the Defendants clearly indicates they were sent using a random or sequential number generator.

44. Several of the Defendants' spam texts encouraged him to keep voting, which he did.

45. Other spam texts encouraged him to reply with his date of birth so he could "join the Coke Zero mobile list," an act the Defendants' text message advised would enter him in a contest to win an autographed football.

46. Defendants' text messages had a dual purpose and the texts from Defendants were clearly intended to offer goods or products for sale in the future. Although Plaintiff did not know this at the time, the hidden agenda behind the Defendants' vote campaign was to collect data from him, including his cell phone number, for the very purpose of generating sales and creating a path to purchase Coke products.

47. After receiving three text messages encouraging him to continue voting, and three more asking him to provide his date of birth and join the mobile list, Plaintiff replied with his date of birth.

48. He immediately received two more messages, one telling him that he had "joined the Coke Zero mobile list," and another telling him, "We'll notify you soon if you win [the contest]." (Ex. 1.) This message also advised he could receive the "full rules" at the "Coke Zero table near Gate 14." (*Id.*)

49. Plaintiff received no Coke-related messages for one month after the football game. Then, on December 5, 2011, Plaintiff received a text message stating that his "subscription to receive alerts from Coke Zero has been renewed." (*Id*.) Plaintiff, who had no desire to receive "alerts" from Coke on his cell phone, immediately responded "stop" for the purpose of having Defendants remove him from the telemarketing list.

*The Defendants' vote campaign violates the TCPA*

50. The Defendants' advertising campaign worked exactly as intended.

51. Before the football game, the Defendants did not have the Plaintiff's cell phone number. For this reason, and because they lacked his express consent to receive telemarketing messages, the Defendants could not send him text spam to promote Coke.

52. The pretext of the vote campaign provided the Defendants with the Plaintiff's cell phone number, and with what the Defendants wrongly contend is his express consent to receive telemarketing messages.

53. The mere act of "voting" for one's favorite football team in response to a message on a stadium scoreboard does not constitute prior express consent to receive autodialed commercial text messages.

54. Nor does it constitute the express written consent required to send telemarketing calls to persons such as the Plaintiff who have listed their telephone numbers on the Do Not Call Registry.

55. In sum, in order to work as intended, the Defendants' vote campaign necessarily violates the TCPA. Through the vote campaign, the Defendants send autodialed text messages to prospective Coke customers without prior express consent, and they send those messages to persons on the Do Not Call Registry without their express written consent.

56. Additionally, the Defendants violated the TCPA by failing to scrub their calling lists of the telephone numbers in the database.

*Because Defendant Mozes' text spam messages were sent on its behalf and for its benefit, Defendant Coke is liable for the TCPA violations alleged*

57. Defendant Coke hired Defendant Mozes to market and promote Coke products, including Coke Zero.

58. Mozes' marketing objectives for Coke are "to engage consumers, collect data, and increase the path to purchase," and to "create positive brand affinity and purchase intent among consumers." *See* http://www.mozes.com/mozes_case_study/coca-cola/ (Last visited February 13, 2013).

59. Mozes is a very active Coke promoter. According to the Mozes website, "[s]ince June 2010 Coca Cola has run over 70 mobile programs with Mozes at events including Essence Music Festival, NASCAR 600, SEC football games, the largest Spring Break party in the world & more." *Id*. It reports "[n]early 20% engagement with on-screen entertainment at SEC games." *Id*.

60. The spam text messages at issue in this case were intended to promote and sell Coke products, and therefore were made on Coke's behalf.

61. Additionally, by partnering with Defendant Mozes to promote Coke in the manner described above, Defendant Coke initiated the transmission of text spam messages within the meaning of the TCPA.

**Class Action Allegations**

62. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

63. Upon information and belief, pursuant to a uniform policy and procedure, Coca-Cola and/or its authorized agents, including Mozes, has engaged in widespread advertising via unsolicited text in violation of the TCPA.

64. Upon information and belief, Coca-Cola and/or its authorized agents, including Mozes, has transmitted unsolicited wireless spam texts to thousands of individuals and entities throughout the United States via auto-dialer without first obtaining recipients' prior express consent.

65. Upon information and belief, Coca-Cola and/or its authorized agents, including Mozes, has transmitted unsolicited wireless spam calls to thousands of individuals and entities throughout the United States whose phone numbers were listed on the Registry, without first obtaining recipients' prior express consent in writing.

66. The classes of persons Plaintiff proposes to represent include:

    a. All persons or entities within the United States who, within the four years prior to the filing of the initial Complaint, received text message calls to their cellular telephone promoting Coca-Cola's goods or services, that were delivered using an automatic telephone dialing system; and

    b. All persons or entities within the United States whose phone numbers were listed on the Registry, who, within the four years prior to the filing of the initial Complaint, received more than one text message within a twelve month period of time, promoting Coca-Cola's goods or services.

67. The class as defined above is identifiable by phone records and phone number databases. On information and belief, the potential class members number in the thousands and constitutes a class so numerous that joinder of all class members is impracticable.

68. Plaintiff is a member of the class.

69. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by engaging in telemarketing via auto-dialer.

    b. Whether Defendant violated the TCPA by engaging in telemarketing to consumers whose phone numbers were listed on the Registry;

    c. Whether the unsolicited text calls at issue were initiated by Coca-Cola;

    d. Whether the unsolicited text calls at issue were for Coca-Cola's benefit;

    e. Whether the defendants obtained prior express consent from consumers before transmitting unsolicited text messages to consumer's cell phones;

    f. Whether the defendants obtained prior express consent in writing from consumers whose numbers were listed on the Registry, before transmitting unsolicited text messages to consumers' cell phones.

    g. Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of Coca-Cola's actions.

70. Plaintiff's claims are typical of the claims of the class.

71. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions.

72. Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Defendants and/or their agents.

73. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

74. Plaintiff is capable of and is willing to represent the other members of the class.

## Legal Claims

*First Cause of Action for Violation of the TCPA:*
*Text Messages to Cell using an Automatic Telephone Dialing System*

75. Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

76. The TCPA prohibits the making of any call—without prior express consent of the called party—by using any automatic telephone dialing system to a cellular telephone.

77. Defendants violated the TCPA by transmitting text messages to the Plaintiff's cell phone via auto-dialer.

78. Specifically, the first five unsolicited text messages sent to the Plaintiff via auto-dialer were in violation of the TCPA.

79. These five text message advertisement calls were made without Plaintiff's prior express invitation or permission.

80. Defendants have, therefore, violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

81. As a result of Defendants' illegal conduct as alleged herein, the members of the class suffered actual damages and, under § 227(b)(3)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

*Second Cause of Action for Violation of the TCPA:*
*Text Messages to Cell Listed on Registry*

82. Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

83. The TCPA prohibits the making of any telephone solicitation to any phone number listed on the Registry, without first obtaining the recipient's prior express consent in writing.

84. Defendants violated the TCPA and Plaintiff's right to privacy by sending five unsolicited text messages to the plaintiff's cell phone, using an automatic telephone dialing system, when the Plaintiff's number was listed on the Registry.

85. Defendants had no prior express consent, in writing, to send the Plaintiff text messages.

86. Defendants have, therefore, violated the TCPA, 47 U.S.C. § 227(c).

87. As a result of Defendants' illegal conduct as alleged herein, the members of the class suffered actual damages and, under § 227(c), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

*Third Cause of Action: Injunctive Relief*

88. Plaintiff refers to and incorporates all previous paragraphs as though fully set forth herein.

89. Defendants, their authorized agents, vendors, or contractors have possession, custody and control of the business records, databases, computer systems and other information and equipment necessary to identify the members of the class, including but not limited to the names, addresses and cellular telephone numbers of the class members. Unless immediate

injunctive relief is ordered, Defendants their authorized agents, vendors, or contractors may alter, erase, delete, destroy or otherwise dispose of and remove such systems, records and equipment. For this reason, Plaintiff is entitled to an order prohibiting and enjoining Defendants their authorized agents, vendors, or contractors from altering, deleting, destroying or otherwise disposing of any documents, records, databases or computer systems that are necessary to identify the members of the class.

90. The TCPA expressly authorizes injunctive relief to prevent further violations of the TCPA.

91. The Plaintiff, acting on behalf of the Class, respectfully petitions this Court to order all Defendants, including but not limited to their employees, agents or other affiliates, to immediately cease engaging in unsolicited text message marketing in violation of the TCPA.

### Relief Sought

Plaintiff, on behalf of himself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. An injunction requiring Defendants to cease all wireless spam activities and restraining Defendants from altering, erasing, changing, deleting, destroying or otherwise removing or disposing of any documents, records, databases, computer systems and the like currently in its possession or control or in the possession or control of its agents and contractors which are used or useful in identifying all persons, corporations or other entities to whom Defendants have transmitted text message advertisements;

3. An order preliminarily and permanently enjoining Defendants from engaging in the practices challenged herein;

    4.       A minimum of $500.00 in damages for each violation of the TCPA;

    5.       Reasonable attorneys' fees and costs; and

    6.       Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

*/s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
BAILEY & GLASSER, LLP
One Chase Corporate Center, Ste. 400
Birmingham, Alabama 35244
Telephone: (205) 313-6491
Facsimile: (205) 313-6492
Email: dselby@baileyglasser.com

Jonathan R. Marshall
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 414-3655
Email: jmarshall@baileyglasser.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WESLEY PHILLIPS, individually
and on behalf of a class of similarly situated
individuals,

       Plaintiff,

v.    Case No. 2:12-cv-04033-JEO

MOZES, INC. and
THE COCA-COLA COMPANY,

       Defendants.

## **CERTIFICATE OF SERVICE**

I certify that on February 27, 2013, "First Amended Complaint" was served on counsel of record through the CM/ECF System, which will notify following CM/ECF participants:

> Robert J. Campbell, Esquire
> Bradley Arant Boult Cummings, LLP
> 1819 Fifth Avenue North
> Birmingham, AL   35203-2119
> *Counsel for Mozes, Inc.*
>
> Blaine C. Kimrey, Esquire
> Bryan K. Clark, Esquire
> Lathrop & Gage, LLP
> 155 N. Wacker Drive, Suite 3050
> Chicago, IL   60606
> *Counsel for Mozes, Inc.*
>
> Harlan I. Prater, IV, Esquire
> Wesley B. Gilchist, Esquire
> Lightfoot Franklin & White, LLC
> 400 20th Street, North
> Birmingham, AL   35203
> *Counsel for Coca Cola Company*

1

L. Joseph Loveland, Esquire
Zachary A. McEntyre, Esquire
Sidney Stewart Haskins, II
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA   30309
*Counsel for Coca Cola Company*

*s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
BAILEY & GLASSER, LLP
One Chase Corporate Center, Suite 400
Birmingham, AL   35244
Telephone:  (205) 313-6491
Facsimile:   (205) 313-6492
Email:  dselby@baileyglasser.com