# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WESLEY PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 2:12-cv-04033-JEO |
| | ) |
| MOZES, INC., | ) |
| THE COCA-COLA COMPANY, | ) |
| and EPRIZE, INC., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This case is before the court on the Defendants' motion to dismiss the Plaintiff's first amended complaint.[1] (Docs. 21, 32).[2] The motion has been fully briefed. For the reasons stated below, the court recommends that the motion be granted in part and denied in part.

## BACKGROUND

This case arises out of a scoreboard promotion used by Defendant The Coca-Cola Company ("Coke") and its marketing agent, Defendant Mozes, Inc., at a college football game in 2011.[3] (Doc. 17 at ¶¶ 1-2). Plaintiff Wesley Phillips ("Phillips") alleges that the Defendants ran a

---

[1]On March 22, 2013, Defendants Gerzhom, Inc. (f/k/a Mozes, Inc.) and The Coca-Cola Company filed a motion to dismiss the first amended complaint. (Doc. 21). On May 7, 2013, Defendant ePrize, Inc. joined in the motion to dismiss. (Doc. 32).

[2]References to "Doc. __" are to the document number assigned by the clerk of the court in the court file.

[3]In 2013, Defendant ePrize, Inc. purchased the assets of Defendant Mozes, Inc., including the Mozes name. (Doc. 23 at ¶ 8). Defendant Mozes, Inc. is now known as Gerzhom, Inc. (Doc. 23 at ¶ 7). Coke, Gerzhom, Inc. (f/k/a Mozes, Inc.), and ePrize, Inc. will be referred to collectively as the "Defendants."

scoreboard message asking fans to text a "vote" for their favorite team, and that after he did so he received a series of "spam" text messages from the Defendants. (*Id.* at ¶ 2). In his first amended complaint, Phillips alleges that the Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, when they sent him the text messages. (*Id.* at ¶ 3). He seeks to bring a class action against the Defendants for their alleged violations of the TCPA. (*Id.* at ¶ 4). The Defendants have moved to dismiss the first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Phillips's claims fail as a mater of law. (Doc. 21).

## FACTUAL ALLEGATIONS

On November 5, 2011, Phillips attended a college football game between the University of Alabama and Louisiana State University. (Doc. 17 at ¶ 36). During the course of the game, Phillips saw an announcement on the stadium scoreboard asking fans to send a text message to the number on the scoreboard to "vote for your favorite football team." (*Id.* at ¶ 37). He responded to the announcement by sending a text message with a vote for "Bama." (*Id.* at ¶ 38; Doc. 17-1). He immediately received two responsive text messages, one inviting him to reply with his date of birth to enter a contest for an autographed football and to join "the Coke Zero mobile list," and a second from "Coke Zero" thanking him for his vote and encouraging him to keep voting for his favorite team. (*Id.* at ¶¶ 43-45; Doc. 17-1). Phillips decided to vote again and sent a second text message with another vote for Bama. (*Id.*) He immediately received the same two responsive text messages. (*Id.*) He then sent a third text message with another vote for Bama, and once again received the same two responsive text messages. (*Id.*) He then replied to the request for his date of birth. (Doc. 17 at ¶ 47; Doc. 17-1). After texting his date of birth he immediately received two new responsive messages, one notifying him that he had "joined the

2

Coke Zero mobile list" and could reply "STOP" to cancel, and the other thanking him for entering the contest for the autographed football and telling him that he would be notified soon if he won. (Doc. 17-1). At this point Phillips stopped texting. (*Id.*) He received no further text messages related to Coke Zero during the remainder of the game. (*Id.*)

Following the game Phillips received no text messages related to Coke Zero until December 5, 2011, when he received a message notifying him that his subscription to receive alerts from Coke Zero had been renewed and advising him that he could reply "STOP" to cancel the subscription. (Doc. 17 at ¶ 49; Doc. 17-1). Phillips replied "STOP" and immediately received a notification that he had "left all lists" and would "no longer receive text msgs." (*Id.*) Phillips does not allege that he received any further text messages related to Coke Zero or any other Coke products.

## STANDARD OF REVIEW

A complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Defendants have filed their motion to dismiss arguing that Phillips's allegations fail to state a claim upon which relief can be granted. Such a motion tests only the sufficiency of the claim set out in the pleadings. *Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). Thus, the " 'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). When ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir.

2010). To survive such a motion, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Speaker*, 623 F.3d at 1380 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

## ANALYSIS

In his first amended complaint, Phillips alleges that the Defendants violated the TCPA when they sent "the first five unsolicited text messages" to his cell phone.[4] (Doc. 17 at ¶¶ 78, 84). He alleges that the text messages were in violation of two sections of the TCPA: § 227(b)(1)(A), which governs the transmission of telephone calls using an automated telephone dialing system ("ATDS"), and § 227(c), which governs telephone solicitations to residential telephone subscribers who have placed their telephone numbers on the national do-not-call registry. The Defendants contend that each claim fails as a matter of law and should be dismissed. The court will address each alleged violation of the TCPA in turn.[5]

---

[4]In Phillips's memorandum in opposition to the Defendants' motion to dismiss, Phillips clarifies that he is alleging violations of the TCPA only with respect to "the first five messages he received from the Defendants, *i.e.*, those messages received in response to his initial votes for 'Bama.'" (Doc. 28 at 6). Based on Phillips's Chart of Text Messages (doc. 17-1), it appears that he received six, not five, text messages in response to his votes. In any event, the salient point is that Phillips is not claiming any violation of the TCPA with respect to the text messages he received from the Defendants after he transmitted his date of birth and entered the contest for an autographed football and joined the Coke Zero mobile list.

[5]In addition to the claims for violation of the TCPA, Phillips's first amended complaint includes a claim for injunctive relief. (Doc. 17 at 15-16). The Defendants moved to dismiss the claim for injunctive relief as well the TCPA claims (*see* doc. 21 at 28-29), but Phillips did not address the claim for injunctive relief in his opposition to the motion to dismiss. Accordingly, Phillips is deemed to have abandoned that claim. *See Fitzpatrick v. Bank of New York Mellon*, ___ F. App'x ___, 2014 WL 4233275, * (11th Cir. August 28, 2014) (failure to address argument constitutes abandonment of the claim).

**A.      TCPA § 227(b)(1)(A)**

The TCPA was developed as a measure to protect telephone service subscribers from the "nuisance" and "invasion of privacy" generated by robotic solicitations. S. REP. NO. 102-178, 1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969. Towards this end, § 227(b)(1)(A) of the TCPA provides in relevant part that "[i]t shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Here, the Defendants argue that Phillips's claim under § 227(b)(1)(A) fails as a matter of law because (1) a text message is not a "call" under the TCPA, (2) Phillips has not adequately pleaded that the Defendants' text messages were sent using an ATDS, and (3) Phillips texted them first, which constituted "prior express consent" to send him text messages.[6] Phillips responds that the TCPA does apply to text messages; that he has plausibly alleged that the Defendants sent their text messages via an ATDS; and that he simply voted for his favorite football team and did not provide any "prior express consent" to the Defendants to send him text messages.

**1.      Text Messages are Calls**

The Defendants contend that no violation of the TCPA took place because a text message is not a "call" within the scope of the TCPA. The court disagrees. Congress delegated to the Federal Communications Commission the authority to make rules and regulations to implement the TCPA. *See* 47 U.S.C. § 227(b)(2). Although the TCPA does not define the term "call," the

---

[6]The Defendants have also moved to dismiss Phillips's claim for violation of § 227(b)(1)(A) on First Amendment grounds. (*See* Doc. 21 at 24-28). On May 30, 2013, Defendants Gerzhom, Inc. and The Coca-Cola Company filed a motion to defer ruling on the First Amendment arguments. (Doc. 37). The court granted the motion on June 3, 2013.

FCC has determined that the TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003) ("2003 FCC Order"). The courts that have addressed this issue, including one court in this district, have uniformly deferred to the FCC's interpretation and have held that the TCPA applies to text messages. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[W]e find that the FCC's interpretation of the TCPA is reasonable, and therefore afford it deference to hold that a text message is a 'call' within the TCPA."); *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, *4 (N.D. Ala. Nov. 9, 2012) ("This court agrees with other courts that have upheld the FCC's interpretation that a 'call' under the TCPA includes not only a traditional, voice telephone call, but also a text message."). This court agrees and holds that a text message is a "call" within the meaning of the TCPA.

    2.    **Automated Telephone Dialing System**

Section 227(b)(1)(A) of the TCPA applies only to the transmission of calls using an ATDS. The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has observed that ATDS technology may have changed over the years, but "the basic function of such equipment ... has not changed–the capacity to dial numbers without human intervention." 2003 FCC Order at 14092.

Here, the Defendants argue that Phillips has not adequately pleaded that the Defendants' text messages were sent using an ATDS because he has acknowledged that the messages were sent in direct response to his text messages to them, "indicating that the messages were not randomly or sequentially generated messages at all." (Doc. 21 at 11). An ATDS, however, need

only have the "capacity" to store or produce randomly or sequentially generated telephone numbers. 47 U.S.C. § 227(a)(1). It is at least plausible that a system capable of sending an immediate, generic response to a text message–as is alleged here–has the capacity to store randomly or sequentially generated numbers. Moreover, the uniform content and instantaneous timing of the text messages sent by the Defendants indicates that they were sent without human intervention, which the FCC has identified as the "basic function" of an ATDS. 2003 FCC Order at 14092. Finally, like other courts, this court takes note of "the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery." *Knutson v. Reply!, Inc.*, 2011 WL 1447756, *1 (S.D. Cal. Apr. 13, 2011). The court is satisfied that Phillips has provided sufficient details about the timing and generic nature of the Defendants' text messages to support an inference of the use of an ATDS. *See Maier v, J.C. Penney Corp., Inc.*, 2013 WL 3006414, *4 (S.D. Cal. June 13, 2013) ("[T]he generic and impersonal content of the text message supports the reasonable inference of use of an ATDS.").

   3.  **Prior Express Consent**

  The Defendants contend that when Phillips texted his "votes" for Bama, he gave them "prior express consent" to send him text messages. The court would first note that "prior express consent" is an affirmative defense to a claim for violation of § 227(b)(1)(A) of the TCPA. *See Pinkard*, 2012 WL 5511039 at *3 ("Prior express consent is an affirmative defense, meaning that the defendant bears the burden of proving it."). A court may consider an affirmative defense when ruling on a motion to dismiss "so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), on reh'g, 764 F.2d 1400 (11th Cir. 1985). Here, the court will consider the Defendants' affirmative defense of "prior express consent" because the fact integral to that defense–that Phillips texted

them before they sent him any text messages–clearly appears on the face of the complaint. (*See* Doc. 17 at ¶¶ 37-38).

With respect to "prior express consent," the FCC has stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) (the "1992 FCC Order"). As noted by the Defendants, various courts have relied on the 1992 FCC Order in dismissing TCPA complaints where the plaintiff had given his or her phone number to the defendant. *See, e.g.*, *Pinkard*, 2012 WL 5511039 (dismissing the plaintiff's TCPA complaint against Wal-Mart for sending her text messages without her consent, where the plaintiff had provided her cell phone number when getting a prescription filled at a Wal-Mart pharmacy); *Emanuel v. Los Angeles Lakers, Inc.*, 2013 WL 1719035, *4 (C.D. Cal. Apr. 18, 2013) (dismissing the plaintiff's TCPA complaint against the Los Angeles Lakers, where the plaintiff "voluntarily provided his number to the Lakers in requesting that his personal message appear on the Staples Center jumbrotron"); and *Ibey v. Taco Bell Corp.*, 2012 WL 2401972, *3 (S.D. Cal. June 18, 2012) (dismissing the plaintiff's TCPA complaint against Taco Bell, where the plaintiff "expressly consented to contact" by Taco Bell when he sent a text message to participate in a survey). The Defendants argue that Phillips's claim for violation of § 227(b)(1)(A) of the TCPA should likewise be dismissed, because Phillips "voluntarily furnished his mobile phone number to Defendants by sending them four text messages, thereby expressly consenting to receive text messages from them." (Doc. 21 at 2).

The court agrees, and Phillips does not appear to dispute, that Phillips voluntarily furnished his cell phone number when he responded to the scoreboard announcement and texted

his initial vote for Bama.[7]  It is unclear from the first amended complaint, however, whether the announcement disclosed that the voting contest was sponsored by Coke.  Whether the result of artful pleading or not, the first amended complaint merely alleges that Phillips "saw an announcement on the stadium's scoreboard instructing fans to send a text message to a specified number to 'vote for your favorite team'" and that he "responded to the announcement and voted for his favorite team–Alabama."  (Doc. 17 at 37-38).  Nowhere is it alleged that the announcement identified Coke as the sponsor of the contest.  Although the Defendants assert in their reply memorandum that Phillips "knew he was texting Defendants in connection with an in-game Coca-Cola promotion" (doc. 30 at 1), the first amended complaint is not that clear, at least with respect to his first text.  Indeed, in Phillips's memorandum in opposition to the Defendants' motion to dismiss, Phillips asserts that "[h]is intention was to vote for and support his team, not to receive telemarketing messages *from some unknown entity*."  Doc. 28 at 20) (emphasis supplied).

Although it may very well be the case (and in fact seems likely) that the scoreboard announcement identified Coke as the sponsor of the voting contest, the court is unwilling to make that assumption when ruling on a motion to dismiss.  And whether the announcement disclosed that Coke was the sponsor of the contest could ultimately be significant, because it is relevant to whether Phillips knew he was furnishing Coke (as opposed to some other entity) with his cell phone number when he texted his first vote for Bama.

Once Phillips received the two responses to his initial vote for Bama, however, he certainly was on notice that he was participating in a promotion sponsored by Coke.  The first

---

[7] The court takes judicial notice of the fact that text messages contain the phone number of the sender.

response invited Phillips to "join the Coke Zero mobile list" and the second response was from "Coke Zero" thanking him for his vote. Doc. 17-1). Thus, when Phillips texted his second and third votes for Bama, he "nowingly released" his cell phone number to the Defendants and gave his "invitation or permission" to be called or texted at that number. Even construing the factual allegations in the amended complaint in the light most favorable to Phillips, he was on notice that if he texted another vote he would receive text messages from the Defendants in response. He also knew what the nature and content of those messages would likely be. He cannot plausibly claim that he was simply voting for his favorite team with no expectation of receiving "telemarketing" messages in return. By voluntarily electing to continue to participate in the Coke Zero promotion after receiving the initial responsive text messages from the Defendants, he expressly consented to being texted by the Defendants at his cell phone number. Accordingly, the court holds that Phillips's claim for violation of § 227(b)(1)(A) is due to be dismissed to the extent it is based on the text messages he received from the Defendants in response to his second and third votes for Bama.

That leaves the two text messages Phillips received in response to his initial vote. As noted above, one of those messages was simply a confirmatory text from Coke Zero thanking him for his vote and encouraging him to keep voting. The court concludes that Phillips expressly consented to receiving such a confirmatory text message, regardless of whether he knew when he texted his initial vote for Bama that the voting contest was sponsored by Coke. By texting a vote and participating in the contest, he consented to receiving a responsive text confirming that his vote had been received. *See Emanuel*, 2013 WL 1719035 at *3 ("Plaintiff admits that he voluntarily sent a text to the Lakers seeking to display the contents of that message on the scoreboard at Staples Center.... Though the Lakers allegedly failed to warn Plaintiff that he

might receive a response, a 'common sense' reading of the TCPA indicates that, by sending his original message, Plaintiff expressly consented to receiving a confirmatory text from the Lakers. ... Indeed ... it is difficult to imagine how he could have been certain that the Lakers received his message *without* a confirmatory response.") (citations omitted).

The other response to Phillips's initial vote, however, was not simply a confirmatory text; it was a solicitation inviting Phillips to "join the Coke Zero mobile list" (as well as enter a contest to win an autographed football). Because the court cannot discern from the amended complaint whether the scoreboard announcement identified Coke as the sponsor of the contest, the court determines that Phillips's claim for violation of § 227(b)(1)(A) of the TCPA is due to survive to the extent, and only to the extent, that it is based on the initial responsive text from the Defendants inviting Phillips to join the Coke Zero mobile list. If Phillips had no idea that he was texting his initial vote to Coke (or one of its marketing agents), then Phillips's claim that the Defendants violated § 227(b)(1)(A) when they texted him about the Coke Zero mobile list is at least facially plausible. Phillips could reasonably claim that he did not consent, expressly or otherwise, to receive a marketing solicitation related to Coke Zero if he did not know he was participating in a Coke Zero promotion.

For the foregoing reasons, the court finds that Phillips's claim for violation of § 227(b)(1)(A) of the TCPA is due to be dismissed except to the extent that it is based on the Defendants' initial text message to Phillips inviting him to join the Coke Zero mobile list.

  **B.** **TCPA § 227(c)**

Phillips's second claim is for violation of § 227(c) of the TCPA, which directs the FCC to promulgate regulations concerning "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). The

FCC regulations implementing § 227(c) provide in relevant part:

> No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200(c)(2). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services ... but such term does not include a call or message ... to any person with whom the caller has an established business relationship. ..." 42 U.S.C. § 227(a)(4). Therefore, the prohibition against initiating telephone solicitations to subscribers who have registered their telephone numbers on the do-not-call registry does not apply if the caller has an established business relationship ("EBR") with the recipient of the call. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 3788, 3797 (2005) ("The TCPA expressly exempts calls to persons with whom the caller has an [EBR] from the restrictions on telephone solicitations.").

Here, Phillips alleges that his cellular telephone number was listed on the do-not-call registry and that the Defendants violated § 227(c) when they texted his cell phone without his prior written consent. (Doc. 17 at ¶¶ 41, 84-86). The Defendants argue that this claim is due to be dismissed because (1) Phillips has not pleaded that he is a "residential telephone subscriber" with respect to his cell phone, and (2) they had an EBR with him.

### 1. Residential Telephone Subscriber

The Defendants argue that Phillips has not adequately alleged that he is a "residential telephone subscriber" with respect to his cell phone. The court disagrees. As the Defendants

themselves emphasize in their reply memorandum, "the TCPA itself makes clear that the Do-Not-Call Registry is open only to *residential telephone subscribers*." (Doc. 30 at 13) (citing 47 U.S.C. § 227(c)(1)). Phillips has alleged that he listed his cell phone number on the do-not-call registry; this necessarily implies that he is a residential telephone subscriber with respect to that phone, since the do-not-call registry is open only to residential telephone subscribers. Put another way, Phillips could not have registered his cell phone number on the do-not-call registry unless he was a residential telephone subscriber. At the very least, his allegation that his cell phone number was listed on the do-not-call registry creates a reasonable inference that he is a residential telephone subscriber with respect to that phone.

      2.      **Established Business Relationship**

As noted above, the restrictions on telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the do-not-call registry do not apply if the caller has an EBR with the recipient of the call. For purposes of telephone solicitations, an EBR is defined as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5).

Here, the Defendants contend that Phillips established a business relationship with them when he participated in the scoreboard voting contest and sent his first text message with his vote for Bama. They argue that by sending his initial text message, Phillips engaged in a "voluntary

two-way communication" inquiring about Coke's products and services and that, as a result, their responsive text messages to him were not telephone solicitations and were not prohibited by § 227(c). (Doc. 21 at 14-15). Phillips counters that he simply texted the word "Bama" and did not request any information from the Defendants so as to form an EBR with them. (Doc. 28 at 26-27).

As a preliminary matter, the court would note that neither Phillips nor the Defendants have identified any case where a court has applied § 227(c) of the TCPA to text messages. As previously discussed, however, the FCC has determined that the TCPA encompasses both voice calls and text calls, and courts have uniformly deferred to the FCC's interpretation on this issue. Accordingly, while recognizing that it is treading into uncharted territory, the court will accept, solely for purposes of the Defendants' motion to dismiss, that § 227(c) applies to text messages.

As the Defendants correctly note, an EBR can be formed on the basis of "an inquiry or application regarding products or services offered by" an entity. *See* 47 C.F.R. § 64.1200(f)(5). Indeed, "[b]y making an inquiry or submitting an application regarding a company's products or services, a consumer might reasonably expect a prompt follow-up telephone call regarding the initial inquiry or application." 2003 FCC Order at 14081. "As long as the company identifies itself adequately, a consumer should not be surprised to receive a telemarketing call from that company, regardless of the product being offered." *Id.* at 14082.

Once again, the court is constrained by the lack of clarity in the first amended complaint as to whether the scoreboard voting contest identified Coke as the sponsor of the contest. If the contest did not identify Coke as the sponsor, then, under any analysis, Phillips could not have been making an inquiry or application regarding Coke's products or services when he texted his initial vote for Bama. In that situation no EBR would have existed between Phillips and the

Defendants when they sent their initial text messages to his cell phone.

The court is satisfied, however, that Phillips's second and third votes did establish a business relationship with the Defendants, regardless of whether he was aware from the outset that the voting contest was sponsored by Coke. The court finds that Phillips's second and third votes functioned as an inquiry or application regarding Coke's products (Coke Zero) and services (the voting contest), given that Phillips was, at least by then, on notice that the voting contest was a Coke Zero promotion. By the time Phillips texted his second and third votes for Bama, Coke had "adequately identified" itself as the sponsor of the contest and Phillips should have "reasonably expect[ed]" and not been "surprised to receive" telemarketing texts from the Defendants, especially since he had already received such texts in response to his initial vote. Moreover, Phillips's voluntary decision to continue texting votes to the Defendants demonstrates that he did not object to receiving their responsive texts and did not feel they were infringing on his privacy rights, otherwise he would have stopped voting.

With respect to the two text messages Philips received in response to his initial vote, the court finds that the Defendants did not violate § 227(c) when they sent him the initial confirmatory message thanking him for his vote and encouraging him to keep voting, because that message did not encourage "the purchase or rental of, or investment in, property, goods, or services" and thus was not a "telephone solicitation" under the TCPA. *See* 42 U.S.C. § 227(a)(4). The text message inviting Phillips to join the Coke Zero mobile list, on the other hand, was a "telephone solicitation" within the meaning of the TCPA as it encouraged, at least indirectly, the purchase of Coke Zero products. Therefore, Phillips's claim for violation of § 227(c) is facially plausible to the extent it is based on the initial message from the Defendants inviting him to join the Coke Zero mobile list, as it is unclear from the first amended complaint

15

whether Phillips was on notice that the voting contest was sponsored by Coke when he texted his first vote.

Accordingly, the court finds that Phillips's claim for violation of § 227(c) of the TCPA is due to be dismissed except to the extent that it is based on the initial text message he received from the Defendants inviting him to join the Coke Zero mobile list.

## CONCLUSION

For the reasons set forth above, the Court recommends that the Defendants' motion to dismiss the amended complaint (docs. 21, 32) be GRANTED as to Phillips's claims for violation of sections 227(b)(1)(A) and 227(c) of the TCPA, except to the extent that those claims are based on the initial text message Phillips received from the Defendants inviting him to join the Coke Zero mobile list (and enter the contest to win an autographed football).  The court recommends that the motion to dismiss be DENIED to the extent it is based on that initial text message from the Defendants.  The court further recommends that the motion be GRANTED as to Phillips's claim for injunctive relief.

## NOTICE OF RIGHT TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk.  Any objections to the failure of the magistrate judge to address any contention raised also must be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from

the date it is filed also shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

**DONE,** this 3rd day of September, 2014.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge