FILED
2016 May-27 PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| WESLEY PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 2:12-cv-04033-JEO |
| | ) |
| MOZES, INC.; THE COCA-COLA | ) |
| COMPANY; and EPRIZE, INC., | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS MOZES, INC., THE COCA-COLA COMPANY, AND EPRIZE INC.'S MOTION TO EXCLUDE TESTIMONY OFFERED BY PLAINTIFF'S PROPOSED WITNESS, RANDALL A. SNYDER

Robert J. Campbell
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
(205) 521-8975

*Attorneys for defendant Mozes, Inc.*

James S. Witcher III
HAND ARENDALL LLC
1200 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
(205) 502-0113

*Attorneys for defendant ePrize, Inc.*

Harlan I. Prater, IV
Wesley B. Gilchrist
Brooke G. Malcom
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
(205) 581-0720

*Attorneys for defendant
The Coca-Cola Company*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 3

I. Snyder's Testimony Regarding Whether Plaintiff's Cell Phone Number Was "Captured" Should Be Excluded. ............................................................. 4

   A. Snyder Admitted He Is Not Qualified to Offer an Opinion Regarding Plaintiff's Consent to Receive Text Messages. ............................................ 4

   B. Snyder's General, Conclusory Statements Regarding "Capture" Are Not Based on Facts and Are Devoid of Any Reliable Methodology. .................. 5

   C. Snyder's Testimony Regarding "Capture" Is Misleading. ........................... 7

II. Snyder's General Testimony Regarding the MMA Best Practices Also Should Be Excluded. ................................................................................... 8

III. Snyder's Opinion That the MozesConnect System Is an ATDS Should Be Excluded. .................................................................................................. 10

   A. Snyder Is Not Qualified to Testify About the Technical Functionalities of the MozesConnect System. ...................................................................... 10

   B. Snyder Did Not Review Any Facts About the MozesConnect System, So His Testimony Is Inherently Unreliable. .................................................. 11

   C. Snyder's Testimony Regarding the MozesConnect System Is Unhelpful. 14

CONCLUSION .................................................................................................... 15

## INTRODUCTION

On November 5, 2011, plaintiff Wesley Phillips ("Plaintiff") responded to a Coke Zero promotion at the Alabama/LSU football game by sending a text message to Defendants, which voluntarily provided them with his phone number. Defendants responded by sending out a confirmation message that was broken into two text messages: one thanking him for participating ("thank you") and one inviting him to join a Coke Zero promotional list ("invitation"). Plaintiff sent Defendants two more text messages, and Defendants sent the same response. Although we don't know whether Plaintiff received the messages or in what order he received them, at some point during the game Plaintiff texted Defendants his birthdate to enroll in the mobile list. Over a year later, he filed this lawsuit under the Telephone Consumer Protection Act of 1991 (the "TCPA"), 47 U.S.C. § 227, *et seq*. Even though Plaintiff responded to one of the invitation messages by texting Defendants his date of birth, he now claims that two of three of the invitation messages were sent without his prior express consent by an automatic telephone dialing system ("ATDS"). Doc. 91, pp. 2, 4.

Plaintiff concedes that the "thank you" messages were permissible, but he nevertheless offers the testimony of Randall A. Snyder, a purported expert, in support of his arguments that his phone number was "captured" by Defendants without his consent and that Defendants' response messages were sent by an

1

ATDS. However, Snyder is not qualified to offer these opinions, he did not review the facts, he has no reliable methodology to explain the basis for his opinions, so his testimony is misleading and unhelpful. In particular, Defendants move to exclude Snyder's testimony on three topics.

First, Snyder uses the term "capture" throughout his testimony to characterize the process by which Plaintiff provided Defendants with his phone number. Snyder admitted, however, that he is not qualified to opine on issues related to consent, that he uses the term capture generically and outside the context of the TCPA, and that he did not review any facts or apply any particular, much less reliable, methodology on which to base his statements.

Second, Snyder opines on the applicability of a publication by the Mobile Marketing Association ("MMA") to Defendants' response text messages, but he does so without offering an opinion about Plaintiff's consent, without having any expertise in the specific technology used by Defendants' system, and without regard to the facts of this case.

Third, Snyder offers the opinion that Defendants used an ATDS. While Snyder may have some general qualifications regarding telephone dialing equipment, he has no expertise in Defendants' technology. As a result, Snyder improperly relies on his say-so to offer an opinion that is contradicted by the facts and completely devoid of any methodology; his opinion is misleading and

unhelpful. As described more fully below, Snyder's testimony on the foregoing three topics should be excluded.

## ARGUMENT

The Court is the gatekeeper for expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). Its role is to "insure that speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). In performing this function, the Court is required to do more than simply "tak[e] the expert's word for it." Fed. R. Evid. 702 advisory committee's note to 2000 amendments; *see also McClain*, 401 F.3d at 1238. Instead, in the Eleventh Circuit, the Court must apply a three-prong test to determine whether expert testimony is admissible: "(1) [Was] the expert… qualified to testify competently regarding the matters he intends to address; (2) [was] the methodology by which the expert reaches his conclusions… sufficiently reliable; and (3) [does] the testimony assist[] the trier of fact, through the application of expertise to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Plaintiff, as the party who is offering Snyder's testimony, bears the burden of meeting these admissibility requirements. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). If the Court determines that Snyder's

3

testimony is inadmissible, Plaintiff cannot rely on it to avoid summary judgment. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007).

I. **Snyder's Testimony Regarding Whether Plaintiff's Cell Phone Number Was "Captured" Should Be Excluded.**

The Court should exclude Snyder's testimony about whether Plaintiff's cell phone number was "captured" because (a) Snyder is not qualified to opine that Plaintiff consented (or did not consent) to receive text messages from Defendants, and (b) Snyder lacks an adequate factual basis to opine on whether the system used to send him the text messages at issue in this case "captured" his number.

    A. **Snyder Admitted He Is Not Qualified to Offer an Opinion Regarding Plaintiff's Consent to Receive Text Messages.**

In cases similar to this one, several district courts have rejected Snyder's opinions that the plaintiffs did not consent to receive text messages. *See Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014), *aff'd*, No. 14-55293, 2016 WL 424778 (9th Cir. Feb. 3, 2016); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW SHX, 2013 WL 1719035, at *4 (C.D. Cal. Apr. 18, 2013). Presumably seeking to avoid the same result in this case, Snyder expressly declined to offer any opinion about whether Plaintiff consented to receive text messages from Defendants. Ex. 17, ¶126:4-14.[1]

---

[1] All citations to exhibits refer to the exhibits filed in support of Defendants' motion for summary judgment unless otherwise noted. *See* Doc. 88 (Table of Contents for Exhibits).

4

Ignoring this, Plaintiff seeks to avoid summary judgment by relying on Snyder's testimony that Plaintiff's cell phone number was "captured" to argue that Plaintiff did not consent to receive text messages from Defendants by voluntarily providing Defendants with his phone number. Doc. 91, pp. 8-9, 12. This argument is simply wrong. As the Federal Communications Commission ("FCC") has explained, under the TCPA "a caller's number is 'captured' by a Caller ID or an ANI device without notice to the residential telephone subscriber[.]" Declaratory Ruling and Order, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11 (Oct. 16, 1992) ("1992 FCC Order"). This concept of capture is relevant only to obtaining a voice caller's phone number without the caller's knowledge or consent. It does not apply here. Because Snyder admitted that he is not qualified to offer *any* opinion regarding consent, his testimony cannot be offered in support of Plaintiff's argument regarding consent. Thus, Plaintiff cannot rely on Snyder's generic use of the term "capture" to avoid summary judgment, especially where Snyder is not offering an opinion for this purpose.

**B.    Snyder's General, Conclusory Statements Regarding "Capture" Are Not Based on Facts and Are Devoid of Any Reliable Methodology.**

An expert's testimony must be found to be "properly grounded, well-reasoned, and not speculative before it can be admitted." *Frazier*, 387 F.3d at

5

1262. Thus, it must be supported by underlying data and fit the facts of the case. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). An expert cannot merely rely on his say-so. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1245 (11th Cir. 2009) (excluding expert testimony where his *ipse dixit* assertion was the only basis for his opinion). Snyder admits that his testimony regarding the "capture" of Plaintiff's cell phone number is based on his say-so—untethered to any specific facts regarding the technology used to send Plaintiff messages—that text messaging technology always "captures" the sender's phone number as part of the "standard protocol." Ex. 17, ¶127:17-130:6.

There is no factual basis for Snyder to reach this conclusion because he did not bother reviewing the MozesConnect software, servers, or a network map of how the MozesConnect system operated. Ex. 17, ¶¶15:15-16:16, 22:17-23:17, 217:19-218:15. Snyder also did not review—and does not understand—the software language used by the MozesConnect system, even though he admitted that knowledge of this code is material to understanding how the system functioned. Ex. 17, ¶20:21-22:16. Snyder did not even review any depositions about the text messages Defendants sent Plaintiff, including Plaintiff's deposition, in which Plaintiff testified that he knew that text messages provide the sender's phone number. Ex. 17, ¶217:25-218:2; Ex. 7, ¶37:4-39:8. Because Snyder relied *only* on his say-so to offer testimony regarding the "capture" of a cell phone

6

number via text message, he failed to review the specific facts of this case, and he did not employ any reliable methodology to support his statements.

As a result, Plaintiff cannot rely on Snyder's conclusory opinion that text messages automatically append the sender's phone number to the message data, which Snyder claims is "completely analogous to, and essentially the same as, the way Caller Id operates for voice calls." Doc. 91, p. 9. There are simply no facts to support this opinion. The MozesConnect system used different technology than Caller ID, it did not *store* any numbers to be called on November 5, 2011, and unlike a voice calling system, it did not *dial* any phone numbers on November 5, 2011. Ex. 14, pp. 13, 22, ¶¶24, 28.[2] These are just a few examples of how Snyder's testimony regarding capture is based on flawed assumptions, does not fit the facts of this case, and is unreliable.

### C. Snyder's Testimony Regarding "Capture" Is Misleading.

"Capture" is a term of art under the TCPA because it relates to the specific and limited circumstance of obtaining a voice caller's phone number without the caller's knowledge or consent. 1992 FCC Order, at *11. To qualify as an expert on this point, the offered opinions should assist the trier of fact with helpful expertise

---

[2] Moreover, it is clear that text messages are distinct from voice calls in many ways, including because they transmit an envelope of data that includes the sender's cell phone number. Ex. 14, p. 14, ¶24(c). The number is not "captured"; the sender provides it. Even Plaintiff, as a frequent user of text message technology, knew that he was transmitting his phone number when he sent the initial text message to Defendants. Ex. 7, ¶¶37:4-39:8, 55:5-13. In fact, senders of text messages expect that the message will transmit their phone number, so that they can receive a response via text message. Ex. 14, pp. 14-15, ¶24(b),(e).

7

that is beyond a layman's understanding. *Frazier*, 387 F.3d at 1262-63. The Court has great latitude in excluding expert testimony that it determines is unhelpful. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1029 (11th Cir. 2014).

Here, Snyder's use of the term "capture" generically without regard to how "capture" relates to "consent" or the specific meaning of the term "capture" under the TCPA is unhelpful and misleading. Ex. 17, ¶¶127:17-130:6,144:19-145:21. Snyder's testimony is unhelpful because he has no specialized or other specific knowledge about the MozesConnect system. Moreover, his use of the term "capture" to describe how the MozesConnect system functioned is misleading as exemplified by Plaintiff taking his statements out of context and attempting to apply them to the 1992 FCC Order. *See*, Doc. 91, p. 9. The MozesConnect system only responded to Plaintiff's text messages on November 5, 2011. The system did not "capture" Plaintiff's number surreptitiously, store the number, and then use it to call Plaintiff that day. Snyder's use of the term "capture" to describe the text messages exchanged between Defendants and Plaintiff is misleading and unhelpful and should be excluded.

## II. Snyder's General Testimony Regarding the MMA Best Practices Also Should Be Excluded.

The MMA is a non-profit trade association whose goal is to accelerate the transformation and innovation of mobile marketing. *See* Mobile Marketing Association, http://www.mmaglobal.com/ (last visited May 24, 2016). In the past,

8

the MMA published some best practices that related to mobile marketing campaigns. As Snyder admitted, the MMA's U.S. Consumer Best Practices ("MMA Best Practices") publication has no legal authority and does not control compliance under the TCPA. Ex. 17, ¶224:08-228:19; *see also* Ex. 14, p. 7, ¶26(b). Nevertheless, in his opposition to summary judgment, Plaintiff erroneously relies on Snyder's testimony regarding the MMA to argue that Defendants' responsive text messages failed to "comply" with the MMA Best Practices. Doc. 91, p. 12.

Snyder lacks the education and experience to qualify him as an expert on the MMA Best Practices. *Lebron v. Sec'y of Fla. Dep't of Children & Families*, 772 F.3d 1352, 1369 (11th Cir. 2014) (expert was unqualified because he lacked expertise in specific area); Fed. R. Evid. 702. He has no education, training, or experience with applying the MMA Best Practices to technology like the MozesConnect system. Ex. 17, ¶¶47:17-24, 63:12-67:4, 220:19-221:14. Knowing this, Snyder admitted that he was not offering an opinion on applicability of the MMA Best Practices to the issue of Plaintiff's consent. Ex. 17, ¶226:04-228:19.

Moreover, Snyder's testimony is unhelpful because it is not based on the facts of the case. Snyder relies on his assumptions, rather than the facts, about the MozesConnect system to conclude that Defendants did not follow the MMA Best Practices because they had a single opt-in text message program. Ex. 16, pp. 19-20, ¶¶40-47, 77-78, 94. This is simply wrong: Defendants offered multiple opt-in

options. Ex. 7, ¶160:21-161:22 (Plaintiff's testimony of his second opt-in); Ex. 15.[3] In addition, Snyder's testimony is not technical or based on specialized knowledge; indeed, the Court can easily read and understand the MMA Best Practices, which were written for the general public, so the Court need not consider the unreliable and misleading interpretations of Snyder. *Winn-Dixie Stores, Inc.*, 746 F.3d at 1029; *see also Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Accordingly, Snyder's testimony should be excluded.

### III. Snyder's Opinion That the MozesConnect System Is an ATDS Should Be Excluded.

Plaintiff relies on Snyder's opinions to argue that the MozesConnect system stored telephone numbers, sent text messages without human intervention, and had the capacity to produce random or sequential numbers to be dialed to argue that the MozesConnect system was an ATDS. Doc. 91, p. 18. Because Snyder is not qualified to testify as an expert on the MozesConnect system and fails to reliably analyze the facts, his testimony should be excluded.

#### A. Snyder Is Not Qualified to Testify About the Technical Functionalities of the MozesConnect System.

To be qualified, Snyder must have specialized competence through his education, experience, or skills in the technology used by the MozesConnect system. *Frazier*, 387 F.3d at 1262. A general understanding is not enough, *Lebron,*

---

[3] In any event, Snyder readily admits that the MMA Best Practices evolved over time and that Defendants' text messages were endorsed by the 2012 version of the publication. Ex. 17, ¶122:23-126:14; see also, Ex. 14, pp. 17-22, ¶¶26-27.

10

772 F.3d at 1369, nor is past experience as a testifying expert. *Beam v. McNeilus Trauck & Mfg., Inc.*, 697 F. Supp. 2d 1267, 1277 (N.D. Ala. 2010).

Snyder lacks the technical education and experience to analyze whether the MozesConnect system is an ATDS. Snyder's education, patents, and work experience are all unrelated to the technology used by the MozesConnect system. Ex. 17, ¶¶38:3-39:6, 47:21-59:21. As a result, he does not understand the organization of the MozesConnect system, *i.e.* the network map, or the code of the MozesConnect system. Ex. 17, ¶¶15:15-16:16, 20:21-23:17, 217:19-218:15. At bottom, Snyder lacks any expertise in the technology used by the MozesConnect system, so he is not qualified to offer opinions about it.

### B. Snyder Did Not Review Any Facts About the MozesConnect System, So His Testimony Is Inherently Unreliable.

Because Snyder does not have the technical education, training, or know-how, he apparently relied on his general experience to determine whether the MozesConnect system as used on November 5, 2011 was an ATDS. To admit his testimony, Snyder must provide an explanation of "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Hendrix ex rel. G.P.*, 609 F.3d at 1201. But Snyder did not offer an explanation of *any* methodology used to arrive at his conclusions, which is a sufficient basis alone to exclude his testimony. *See, e.g., Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL

11

1767097, at *6 (S.D. Fla. May 2, 2014) (excluding Snyder's testimony, in part, for failing us use a reliable methodology).[4]

Snyder relied primarily on his purported general familiarity with mobile marketing companies to draw conclusions about the MozesConnect system. Ex. 17, ¶12:06-15:14. As a result, Snyder did not bother reviewing the integration of the system's servers, which would have been integral to reaching his conclusion that the MozesConnect system was a cloud system. Ex. 17, ¶¶16:17-20:20, 22:17-23:17; Ex. 16, pp. 21-22, ¶¶50, 52. He further admitted that he speculated regarding the scope and size of the in-venue promotion serviced by the MozesConnect system on game day. Ex. 17, ¶138:9-140:19. Snyder also did not review the MozesConnect system code, even though it is material to determining how the system functioned and whether it required human intervention. Ex. 17, ¶¶20:23-22:16. And, Snyder did not review *any* of the depositions of Mozes' witnesses. Ex. 17, ¶12:6-19. As a result, Snyder offers equivocal testimony at best on key determinations of whether Defendants' system was an ATDS.[5]

---

[4] *See also Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1196 (W.D. Wash. 2014) (disagreeing with Snyder's analysis of whether system was an ATDS, noting that the Ninth Circuit likewise disagreed in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951(9th Cir. 2009)); Ex. 17, ¶¶187:9-191:7, 198:17-199:24 (Snyder's testimony regarding these cases).
[5] First, Snyder claimed that "*most* computer systems already have random number generators," such as an Excel spreadsheet or an iPhone. Ex. 17, ¶150:19-151:5 (emphasis added). But, then he testified that text messaging programs typically do not use random or sequential number generators. Ex. 17, 157:13-158:20. Similarly, Snyder claimed that "[i]t is *evident* that Defendants' computer equipment…stored the cellular phone numbers[.]" Ex. 16, p. 22, ¶51 (emphasis added). But Snyder conceded that it was possible to send responsive messages without

12

Further, of the few materials that he did review, Snyder improperly based his opinions on inadmissible and irrelevant information. Central to Snyder's opinion was a marketing description from the 2015 version of the HelloWorld website. Ex. 17, ¶¶14:24-15:10, 23:18-25:18. Snyder had no idea whether it accurately represented the MozesConnect system used on November 5, 2011. Ex 17, ¶28:9-30:22. Nevertheless, Snyder relied on this information to conclude that the MozesConnect system was an ATDS. Ex. 17, ¶29:1-5.[6]

Not only did Snyder ignore the facts of this case and rely on his general assumptions, his assumptions are biased. Snyder approaches his analysis with the general assumption that every text-message marketing system is an ATDS. Ex. 17, ¶160:7-161:17. Snyder testifies almost exclusively for plaintiffs in TCPA cases, who provide nearly two-thirds of his professional income. Ex. 17, ¶203:1-12. Snyder even testified as an expert in a TCPA case where Plaintiff was counsel of record. Ex. 17, ¶242:20-243:2. As a result, his biased opinions presuppose the conclusion. *See Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1174, n.3 (1st Cir. 1992) ("Experts whose opinions are available to the highest

---

storing phone numbers. Ex. 17, ¶137:24-138:8. These examples underscore that Snyder's opinion testimony is unreliable.

[6] In contrast, the uncontroverted facts show that the MozesConnect system used on November 5, 2011 was not an ATDS. The system (1) only responded to incoming text messages; (2) required human monitoring and intervention to trigger the responses; (3) did not produce phone numbers to be called; and (4) did not generate sequential or random phone numbers. Exs. 14, p. 22, ¶28; 14A; 14B.

bidder have no place testifying in a court of law.")(citation and internal quotation marks omitted).

Thus, in light of Snyder's failure to rely on specific facts of this case to render his opinions regarding the MozesConnect system, "there is simply too great an analytical gap between the data and the opinion proffered" for Snyder's testimony to be admitted as expert opinion. *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010).

### C. Snyder's Testimony Regarding the MozesConnect System Is Unhelpful.

Snyder's understanding of what constitutes an ATDS is fundamentally flawed and has been rejected by other district courts on this basis alone. *Johnson v. Yahoo!, Inc.*, No. 14 CV 2028, 2014 WL 7005102, at *5 (N.D. Ill. Dec. 11, 2014).[7] Moreover, expert opinions that do not depend on expertise should be excluded. *See Legg*, 2014 WL 1767097, at *5 (excluding Snyder's opinion because, in part, he looked at rate of the text messages to determine that the system was an ATDS, which was within the jurors' understanding).

Snyder's testimony here fares no better than in *Legg*, where again, he relies on a nontechnical document to determine the rate of text messages and from that

---

[7] *See also Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 (E.D. Pa. 2014) (finding Snyder's analysis of what constitutes an ATDS to be misleading and "entirely unreliable" when he added the phrase "or from a list of telephone numbers" to his declaration) *vacated and remanded on other grounds* 629 Fed. Appx. 369 (3rd Cir.); *cf.* Ex. 16, p. 31, ¶92 (Snyder continues to conclude that the MozesConnect system is an ATDS because, in part, it "dials stored numbers from a list").

14

document erroneously concludes that the messages were sent automatically and without human intervention. In fact, Snyder relied on a time and date log from the MozesConnect system that only showed when the messages were sent out from the system, not when the messages were received by Plaintiff. Ex. 17, ¶78:23-82:6. Similarly, Snyder reviewed a non-technical marketing document from HelloWorld's website to support his conclusions about the operability of the MozesConnect system. Ex. 17, ¶29:1-5. Because Snyder does not offer opinions that require any expertise, his testimony is unhelpful and should be excluded.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant Defendants' motion to exclude Plaintiff's expert testimony.

Respectfully submitted, this 27th day of May, 2016.

/s/ Robert J. Campbell
Robert J. Campbell
BRADLEY ARANT BOULT
CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
(205) 521-8975
(205) 521-6975 (facsimile)

/s/ Harlan I. Prater, IV
Harlan I. Prater, IV
Wesley B. Gilchrist
Brooke G. Malcom
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
(205) 581-0720
(205) 380-9120 (facsimile)

| | |
|---|---|
| Blaine Kimrey (*pro hac vice*)<br>Bryan Clark (*pro hac vice*)<br>VEDDER PRICE PC<br>222 N. LaSalle Street<br>Chicago, Illinois 60601<br>(312) 609-7865<br>(312) 609-5005 (facsimile)<br><br>*Attorneys for Defendant Mozes, Inc.* | L. Joseph Loveland (*pro hac vice*)<br>S. Stewart Haskins (*pro hac vice*)<br>Zachary A. McEntyre (*pro hac vice*)<br>KING & SPALDING LLP<br>1180 Peachtree Street, NE<br>Atlanta, Georgia 30309<br>(404) 572-4600<br>(404) 572-5139 (facsimile)<br><br>*Attorneys for Defendant*<br>*The Coca-Cola Company* |

*/s/ James S. Witcher III*
James S. Witcher III
HAND ARENDALL LLC
1200 Park Place Tower
2001 Park Place North
Birmingham, AL 35203
(205) 502-0113
(205) 397-1314 (facsimile)

Henry Pietrkowski (*pro hac vice*)
REED SMITH LLP
10 S. Wacker Dr., 40th Floor
Chicago, IL 60606
(312) 207-3904
(312) 207-6400 (facsimile)

*Attorneys for Defendant ePrize, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2016, I electronically filed the foregoing **DEFENDANTS MOZES, INC., THE COCA-COLA COMPANY, AND EPRIZE INC.'S MOTION TO EXCLUDE TESTIMONY OFFERED BY PLAINTIFF'S PROPOSED WITNESS, RANDALL A. SNYDER** with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to the following counsel of record:

>David L. Selby, II
>John W. Barrett
>Jonathan R. Marshall
>BAILEY & GLASSER, LLP
>One Chase Corporate Center, Suite 400
>Birmingham, Alabama 35244
>
>Ronald A. Marron (*pro hac vice*)
>Alexis M. Wood (*pro hac vice*)
>LAW OFFICES OF RONALD A MARRON
>651 Arroyo Drive
>San Diego, CA 92103
>619-696-9006

>>/s/ Harlan I. Prater, IV
>>OF COUNSEL