FILED

2016 Jun-17  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**WESLEY PHILLIPS, individually
and on behalf of a class of similarly situated
individuals,**

     **Plaintiff,**

**v.**

**MOZES, INC.,
THE COCA-COLA COMPANY,
and EPRIZE, INC.,**

     **Defendants.**

**Civil Action No: 2:12-cv-04033-JEO
CLASS ACTION**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMONY OFFERED BY PLAINTIFF'S
<u>PROPOSED WITNESS, RANDALL A. SNYDER</u>**

## **Table of Contents**

Introduction ...................................................................................................................1

Facts .............................................................................................................................1

Argument......................................................................................................................4

    A.  Mr. Snyder is amply qualified to opine on the similarities between
        wireless and wireline technologies, as they relate to the issue of
        "capture." .......................................................................................................6

    B.  Mr. Snyder is well-qualified to provide useful, reliable testimony
        concerning the Mobile Marketing Association Best Practices.......................8

    C.  There is no basis for excluding Mr. Snyder's testimony that the
        MozesConnect System is an ATDS. ............................................................10

Conclusion .................................................................................................................12

## INTRODUCTION

This case involves a mobile marketing campaign that harnessed "short code" technology to enable SMS ("text message") communications between consumers and the Defendants. Plaintiff's expert, Randall Snyder, has more than 30 years' experience in the telecommunications industry, founded one of the world's first mobile marketing companies, and literally *invented* the short code (along with ten other SMS related technologies). Yet, somehow, Defendants contend Mr. Snyder is unqualified to testify about mobile marketing and wireless telecommunications technology in this case.

Defendants' motion sometimes explains why Defendants believe Mr. Snyder's opinions are wrong, but never establishes that he is unqualified, his methods are flawed, or his opinions are not helpful. Defendants' challenges are fodder for cross-examination, not grounds for exclusion. For that reason, Defendants' motion should be denied.

## FACTS

Plaintiff contends that he, along with a putative class of similarly situated individuals, received unwanted marketing text messages from Defendants in violation of the Telephone Consumer Protection Act of 1991. Specifically, while attending an SEC football game between Alabama and LSU, Plaintiff saw a message on the scoreboard asking him to text his vote for the winner of the big

game. Unaware that the "vote" was merely a guise for collecting consumer data, and eager to support his team, Plaintiff texted "BAMA" to the number 66937 (known as a "short code"). Plaintiff *did not* include his telephone number in the message. Nonetheless, in rapid response, Defendants sent two text messages to Plaintiff's mobile phone: (1) a "thanks" and confirmation that his vote had been received, and (2) a solicitation to win an autographed football and join the Coke Zero mobile marketing list. (*Id.*). Plaintiff voted twice more before the one-minute promotion ended, each time receiving the same two messages in response.

Defendants moved to dismiss Plaintiffs' complaint, arguing, among other things, that Plaintiff consented to the marketing messages by casting his vote, and also that it did not violate the TCPA because the computer program used to send the automated text messages ("MozesConnect") did not qualify as an "Automated Telephone Dialing System" ("ATDS") under the TCPA. The Court denied Defendants' motion to dismiss, rejecting Defendants' consent defense on the basis of Plaintiff's allegation that his number was "captured" rather than "knowingly released." (ECF No. 63). The Court thereafter entered a scheduling order calling for a period of discovery on limited issues, including: (1) whether MozesConnect qualified as an ATDS and (2) "facts related to whether Mr. Phillips' phone number was captured by Defendants." (ECF No. 69).

2

In order to address these issues, Plaintiff retained the services of a recognized expert in wireless communications technology, Randall Snyder. Mr. Snyder holds a degree in Mathematics and has more than three decades' experience specializing in wireless telecommunications technology, network architecture, system engineering, and marketing. (Snyder C.V. at 1, attached as Ex. B). In 2002, Mr. Snyder founded m-Qube, Inc., a mobile marketing company that, like Defendant Mozes, Inc., enabled branded companies to deploy promotional marketing campaigns with mobile subscribers via SMS messaging. (*Id.* at 3). m-Qube, in-turn, founded the Mobile Marketing Association, a voluntary trade group that establishes best practices for mobile marketing promotions. (Snyder Report ¶ 7, attached as Ex. A).

Mr. Snyder holds the patent for inventing the short code, as well as ten other patents for SMS technology. (*Id.*). He has lectured on telecommunications issues, authored two books on telecommunications networking, and was tasked with developing standards for the interconnection of wireless and wireline networks by the American National Standards Institute ("ANSI"). (*Id.* ¶ 5-6). He has frequently consulted for the CTIA (a wireless communication industry trade group), and has been retained as an expert by both plaintiffs and defendants in more than 100 cases, including more than 60 cases involving text-messaging technology, and more than 70 cases involving the TCPA. (*Id.* ¶ 4). In 2009, the Ninth Circuit

recognized Mr. Snyder's status as an expert in wireless communication in

*Satterfield v. Simon & Schuster, Inc.*, the seminal opinion that first established text

messages as "calls" under the TCPA. *See* 569 F.3d 946 (9th Cir. 2009).

Mr. Snyder has been extraordinarily dedicated to his work in this case. He

has spent dozens of hours meeting with counsel, reviewing records and documents,

and drafting a comprehensive report. He also sat for a seven-hour deposition,

answering questions by counsel for all three defendants.

## ARGUMENT

In determining the admissibility of expert testimony, the court applies a

three-part test, considering whether:

> (1) the expert is qualified to testify competently regarding the matters
> he intends to address; (2) the methodology by which the expert
> reaches his conclusions is sufficiently reliable as determined by
> the sort of inquiry mandated in *Daubert* [*v. Merrell Dow
> Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)]; and (3) the testimony
> assists the trier of fact, through the application of scientific,
> technical, or specialized expertise, to understand the evidence or to
> determine a fact in issue.

*United States v. An Easement & Right-of-way Over 6.09 Acres of Land, More or*

*Less, in Madison Cty., Alabama*, 140 F. Supp. 3d 1218, 1236 (N.D. Ala. 2015)

(citing *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)). While the

proponent of an expert bears the ultimate burden of meeting these requirements, a

party moving to exclude expert testimony must make a threshold showing

sufficient to indicate that his adversary will be unable to meet his burden at trial. *Id.* at 1236-37.

Importantly, a motion to exclude an expert's testimony is not the proper tool for attacking the substance of an expert's opinion. As the Eleventh Circuit has noted, "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001). Rather, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence.'" *Id.* (quoting *Daubert,* 509 U.S. at 596).

In their motion, Defendants seek to exclude Mr. Snyder's testimony with respect to three subjects:

1. His opinion that the mechanism by which SMS communications transmit and telephone numbers is "completely analogous to, and essentially the same as, the way 'Caller ID' operates for voice calls . . . thereby enabling the called party . . . to obtain and *capture* the telephone number of the calling party." (Ex. A ¶¶ 13-14) (emphasis added);

2. His opinion that the Defendants' mobile marketing campaign did not comply with the Mobile Marketing Association's best practices. (*Id.* ¶ 94); and

5

3. His opinion that the equipment used by the Defendants to operate an automated mobile text messaging campaign qualifies as an ATDS as defined by the TCPA. (*Id.* ¶ 91).

Though defendants attack the substance of Mr. Snyder's testimony, they fall far short of establishing that his opinions fail to meet the *Frazier* requirements. As explained below, Mr. Snyder is more than qualified to render these opinions, which are reliable and supported by evidence, and which will aid the trier of fact in understanding the technical issues in this case.

**A.    Mr. Snyder is amply qualified to opine on the similarities between wireless and wireline technologies, as they relate to the issue of "capture."**

Defendants' lead argument — that Mr. Snyder "admits" that he is not qualified to opine on whether the plaintiff consented to the text messages at issue — is a red herring. Plaintiff never asked Mr. Snyder to render an opinion on that legal issue, and he never did.

Rather, Plaintiff submits Snyder's opinions for the necessary and appropriate purpose of helping the fact-finder understand the technical issues underlying Plaintiff's legal argument. Specifically, Plaintiff contends that he did not consent to receive the text messages at issue because instead of providing his number to the Defendants, it was "captured." *See In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991,* 27 FCC Rcd. 1830, 8769 ¶ 30 (Feb. 15, 2012) ("[I]f a caller's number is 'captured' by a Caller ID or an [automatic number

identification] device without notice to the residential telephone subscriber, the

caller cannot be considered to have given an invitation or permission to receive

autodialer or prerecorded voice message calls."). As Plaintiff's argument goes, the

way Defendants captured his telephone number was effectively and legally

indistinguishable from the way a "Caller ID" works. Notably, the Court

specifically identified the need for evidence on this issue in its Order establishing

the parameters for the first phase of discovery. (*See* ECF No. 69). Mr. Snyder's

report addresses that need.

Contrary to Defendants' assertions, Mr. Snyder is uniquely qualified to

opine on the way information is transmitted across wireless and wireline networks,

and the similarities between the two. Indeed, he is responsible for developing

industry-standard protocols for connecting those networks. (Ex. A ¶ 5). So when

Mr. Snyder testifies that the sender's telephone number is automatically appended

to a text message when it is transmitted (*Id.* ¶ 12-13), that testimony is not based

solely on Mr. Snyder's "say-so," as Defendants derisively contend, but on a hard-

earned understanding of SMS signaling protocols and wireless telecommunications

technologies. (*Id.* ¶¶ 4-5). And when comparing the way a wireless system

captures and transmits numbers to the way a wireline network works, Mr. Snyder's

allegations are hardly "conclusory," but instead grounded in a solid understanding

of both fields.

Lastly, Defendants' claim that Mr. Snyder's use of the word "capture" is misleading is no more than a restatement of Defendants' legal argument that the concept of "capture" ought to be limited to voice calls. In this sense, Mr. Snyder's opinions are not misleading, they just do not comport with Defendants' view of the law. That is no basis for excluding Mr. Snyder's testimony.

**B.      Mr. Snyder is well-qualified to provide useful, reliable testimony concerning the Mobile Marketing Association Best Practices.**

In a rehash of its motion for summary judgment, Defendants initially protest Mr. Snyder's testimony concerning the MMA Best Practices on the ground that the guidelines have no legal force and do not control compliance under the TCPA. But like so many of the arguments in Defendants' motion to exclude, that contention is a potential topic for cross-examination, not a ground for exclusion.

Next, Defendants somewhat incredibly claim that Mr. Snyder lacks the education and experience to qualify as an expert on the MMA Best Practices. In so contending, Defendants ignore that: (1) Mr. Snyder had substantial hands-on experience in the mobile marketing industry as the founder and vice-president of a mobile marketing company, m-Qube; and (2) while at m-Qube, Mr. Snyder was actually part of the small team that first drafted the MMA Best Practices. (Ex. B at 3; Snyder Dep. Tr. at 63:12-65:11, attached as Ex. C). Defendants' assertion that Mr. Snyder is unqualified because he has no experience applying the MMA

8

guidelines to the specific equipment used in this case is irrelevant; the MMA Best

Practices were designed to apply to the mobile marketing industry as a whole, not

just particular pieces of software.

After arguing that Mr. Snyder lacks the expertise to testify about the MMA,

Defendants next contend, with no apparent recognition of irony, that Snyder's

testimony about the MMA Best Practices should be excluded because it *does not*

require specialized knowledge. But while Plaintiff certainly agrees with

Defendants that the Court is capable of reading and understanding the Best

Practices, that does not mean Mr. Snyder's testimony is incapable of "help[ing] the

trier of fact." Fed. R. Evid. 702(a). The Best Practices are written for an audience

familiar with the mobile marketing industry and its jargon. Mr. Snyder's practical

experience is therefore helpful in providing the necessary context and explanation.

*See, e.g., Kopf v. Skyrm,* 993 F.2d 374, 377 (4th Cir. 1993) (concluding that an

expert may aid in understanding familiar matters if the expert's experience and

training provides a more thorough or refined understanding than ordinary

experience would afford).

Finally, Defendants claim that Mr. Snyder's testimony should be thrown out

because he relied on certain flawed assumptions. That contention is not only

unsupported, but again, is at-best a quibble to be resolved by the fact finder.

9

**C.    There is no basis for excluding Mr. Snyder's testimony that the MozesConnect System is an ATDS.**

Defendants concede — as they must — Mr. Snyder's overall qualification to testify concerning ATDS equipment. (ECF No. 95 at 2). Their only ground for excluding Mr. Snyder's testimony on the ATDS issue in this case is that he allegedly did not review sufficient information about the MozesConnect system. That argument is without merit.

In fact, Mr. Snyder reviewed every single interrogatory response and every single document produced by Defendants in response to Plaintiff's requests for information about the MozesConnect system. (Ex. A ¶ 3). It is true that Mr. Snyder did not review the depositions of Mozes' corporate representative, but Defendants conspicuously do not explain how doing so would have improved Snyder's analysis; the fact is, Mozes' witness refused to divulge much information about MozesConnect at all (*See, e.g.,* Mozes, Inc. 30(b)(6) Dep. Tr. at 33:4-10 (denying knowledge of MozesConnect programming details); 72:1-4 (giving evasive response to "What is MozesConnect?"), attached as Ex. D). Thus, to the extent that Mr. Snyder was unable to review certain facts about Defendants' autodialing system, it is only because Defendants' failed to meaningfully respond to Plaintiff's discovery.

Nonetheless, Mr. Snyder was able to rely on standard forensic methodology — gathering and analyzing information about past events — combined with technological experience and training to form a reliable opinion as to whether MozesConnect met the requirements of an ATDS. *See, e.g., Trilink Saw Chain, LLC v. Blount, Inc.,* 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (concluding that expert with relevant education or background can, based on reasoning from scientific principles, testify competently about a product even though he has not had actual experience with the product). For example, by reviewing records produced by Defendants, Mr. Snyder was able to identify messaging rates and patterns that correlate with the use of autodialing equipment and the lack of human intervention. (Ex. A ¶¶ 52, 83-85). Evidence that numerous other individuals received identical messages within a short time frame strengthened Mr. Snyder's conclusion. (*Id.* ¶ 85). Further, Mr. Snyder was able to testify that, based on his extensive knowledge of wireless communications networks and mobile marketing practices, it is not possible to respond to a text message in kind without, at some point, storing the recipient's telephone number on the sender's device. (*Id.* ¶¶ 18, 23, 29, 51, 80-81).  While the Defendants are free to disagree with the results of Mr. Snyder's analysis, that is a debate that should be resolved by the trier of fact, not a motion to exclude.

11

Defendants' remaining attacks on Mr. Snyder's ATDS opinions are no more persuasive. Defendants' garden-variety claims of "hired-gun" bias are unfounded, but in any event the existence of bias in an expert witness's testimony is a question for the jury. *See Adams v. Lab. Corp. of Am.,* 760 F.3d 1322, 1332 (11th Cir. 2014). And Defendants' continued protestations that Plaintiff misconstrues the TCPA's definition of an ATDS at-best present an issue for summary judgment, not a motion to exclude.

## CONCLUSION

For the foregoing reasons, Defendants' *Motion to Exclude Testimony Offered by Plaintiff's Proposed Witness, Randall A. Snyder,* should be denied.

**Respectfully submitted,**
Plaintiff,
By Counsel


*s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
BAILEY & GLASSER LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL  35244
Telephone:  (205) 988-9253
Facsimile:   (205) 733-4896
Email:  dselby@baileyglasser.com

John W. Barrett
Jonathan R. Marshall
Ryan M. Donovan
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV  25301

12

Telephone:  (304) 345-6555
Facsimile:   (304) 414-3655
Email:  jbarrett@baileyglasser.com
Email:  jmarshall@baileyglasser.com
Email:  rdonovan@baileyglasser.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 17, 2016, a true and correct copy of "Plaintiff's Response in Opposition to Defendant's Motion to Exclude Testimony Offered by Plaintiff's Proposed Witness, Randall A. Snyder" was filed with the Clerk of Court using the CM/ECF system which will send an electronic notification of such filing to the following counsel of record:

Robert J. Campbell
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
rjcampbell@babc.com
*Counsel for Mozes, Inc.*

Blaine C. Kimrey
Bryan K. Clark
Vedder Price PC
222 N. LaSalle
Chicago, IL 60601
bkimrey@vedderprice.com
bclark@vedderprice.com
*Counsel for Mozes, Inc.*

Harlan I. Prater, IV
Wesley B. Gilchrist
Brooke G. Malcom
Lightfoot Franklin & White, LLC
400 20th Street, North
Birmingham, AL 35203
hprater@lightfootlaw.com
wgilchrist@lightfootlaw.com
bmalcom@lightfootlaw.com
*Counsel for Coca Cola Company*

L. Joseph Loveland
Zachary A. McEntyre
Sidney Stewart Haskins, II
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, GA  30309
jloveland@kslaw.com
zmcentyre@kslaw.com
shaskins@kslaw.com
*Counsel for Coca Cola Company*

James S. Witcher, III
Hand Arendall, LLC
2001 Park Place North, Suite 1200
Birmingham, AL 35203
jwitcher@handarendall.com
*Counsel for ePrize, Inc.*

Henry Pietrkowski
Timothy R. Carraher
Reed Smith, LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606-7507
HPietrkowski@ReedSmith.com
TCarraher@ReedSmith.com
*Counsel for ePrize, Inc.*

*s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)